1  Kelly W. Cunningham, Esq., No. 186,229
2  Daniel M. Cislo, Esq., No. 125,378
   CISLO & THOMAS LLP
3  12100 Wilshire Blvd., Suite 1700
   Los Angeles, California 90025-7103
4  Telephone: (310) 451-0647
   Telefax: (310) 394-4477

5  Attorneys for Plaintiff
   Pinkette Clothing, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PINKETTE CLOTHING, INC., a California corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>COSMETIC WARRIORS LIMITED, believed to be a United Kingdom limited company doing business as LUSH HANDMADE COSMETICS, and DOES 1-9, inclusive,<br><br>          Defendants. | CASE NO.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF**<br><br>**(1) NO TRADEMARK INFRINGEMENT, NO LIKELIHOOD OF CONFUSION, AND NO FALSE ASSOCIATION;**<br><br>**(2) DEFENDANTS HAVE DEVELOPED NO TRADEMARK RIGHTS FOR CLOTHING;**<br><br>**(3) DEFENDANTS ARE BARRED BY LACHES FROM ALLEGING A LIKELIHOOD OF CONFUSION;**<br><br>**AND**<br><br>**(4) DEFENDANTS' FEDERAL TRADEMARK APPLICATION AND CANCELLATION PROCEEDING ARE IMPROPER;**<br><br>**DEMAND FOR JURY TRIAL** |

For its Complaint, Plaintiff Pinkette Clothing, Inc. ("Pinkette" or "Plaintiff"), alleges and claims the following:

## I. THE PARTIES

1. Pinkette is a California corporation with a principal place of business located in this judicial district at 4550 Alcoa Avenue, Vernon, California 90058.

2. Upon information and belief, Defendant Cosmetic Warriors Limited, is a United Kingdom limited company doing business as Lush Handmade Cosmetics with a place of business located at 29 High Street, Poole, Dorset BH15 1AB, United Kingdom (collectively with Does 1-9, "CWL").

3. The true names and capacities, whether individual, corporate or otherwise of Defendants Does 1-9 inclusive, are unknown to Plaintiff, who therefore sues them by such fictitious names. Plaintiff will seek leave to amend this complaint to allege their true names and capacities when they have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that Plaintiff's damages as herein alleged were proximately caused by those Defendants. At all times herein mentioned, Defendants Does 1-9 inclusive were the agents, servants, employees or attorneys of their co-defendants, and in doing the things hereinafter alleged were acting within the course and scope of their authority as those agents, servants, employees or attorneys, and with the permission and consent of their co-defendants.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this subject matter of this Complaint pursuant to 28 U.S.C. §§ 2201, 1331, and 1367 in that this is an action for a declaratory judgment involving rights arising from the federal Lanham Act, 15 U.S.C. Sections 1051, *et al.*

5. This Court has personal jurisdiction over Defendants on the grounds that Defendants actively direct their marketing, advertising, promotions, sales, and services at California residents as their customers, including through their website, www.lushusa.com, and through numerous retail stores located in this judicial district.

6. Venue is proper pursuant to 28, U.S.C. § 1391(b) as to the Defendants because a substantial part of their acts or omissions giving rise to the claims herein occurred in this judicial district.

### III. FACTUAL BACKGROUND

#### A. Pinkette and Its Trademark LUSH for Clothing

7. Pinkette sells and has continuously sold clothing under the LUSH trademark in commerce in the United States since at least July 2003. Over the years, Pinkette has developed extensive goodwill and a highly acclaimed reputation for trendsetting women's apparel, creating stand out pieces that are versatile and uncompromising in style with California flair.

8. Pinkette sells its clothing through numerous boutiques as well as through a number of larger retail stores throughout the country and North America and, as a result, has had an undeniably strong nationwide presence as LUSH in women's clothing for essentially the entire twelve (12) years.

9. Additionally, on May 11, 2009, Pinkette filed with the United States Patent and Trademark Office ("USPTO") for federal trademark registration of its LUSH trademark for clothing. The application affords Pinkette constructive nationwide notice of its claim of ownership of the LUSH trademark for clothing. The USPTO examined the LUSH mark, found it allowable for registration, and published it for opposition on April 27, 2010. On July 13, 2010, following this

3

examination process and receiving no opposition from anyone during the statutory opposition period, the USPTO acknowledged Pinkette's right to use the LUSH trademark for clothing by granting it U.S. Trademark Registration No. 3,816,441. Pinkette attaches hereto as Exhibit 1 a true and correct copy of this trademark registration.

**B.     Pinkette's Due Diligence Before and After Adopting LUSH**

10.     Before beginning to use LUSH for clothing, Pinkette informally searched the industry, the major industry sources, and the Internet for any uses of LUSH for clothing in the United States and North America and found nothing. Only later did Pinkette encounter the entry into U.S. marketplace of LUSH HANDMADE COSMETICS for cosmetics and perfumes. Pinkette began finding retail stores opening in various locations with signage bearing the LUSH trade name accompanied by signage bearing the phrase FRESH HANDMADE COSMETICS and selling LUSH HANDMADE COSMETICS cosmetics and perfumes.

11.     Pinkette never uncovered any clothing items for sale in these retail stores. Indeed, upon information and belief, to Pinkette's knowledge, CWL had never and has never sold any clothing items or clothing-related items (other than perhaps uniforms purportedly sold only to its own store employees), let alone any clothing items displaying the word LUSH -- let alone any clothing items having any clothing tag or label that displayed the word LUSH as a trademark.

12.     Indeed, it appears that CWL in 1996 applied for a U.S. trademark registration for LUSH for cosmetics and other related goods. In the application, CWL did not list any clothing or clothing-related goods. Also, while CWL has filed or obtained other U.S. trademark applications for LUSH over the years, the applications never listed any clothing or clothing-related goods (before CWL

engaged in the present dispute, that is). Pinkette attaches hereto as Exhibit 2 a true and correct list of CWL U.S. trademark applications and registrations, known to Pinkette, showing that CWL filed a U.S. trademark application for LUSH for clothing only very recently -- after CWL engaged in the present dispute.

### C. Pinkette's Canadian Application for LUSH for Clothing

13. In or about 2013, Pinkette decided it should register its LUSH trademark in Canada. It had been selling its LUSH clothing in Canada since 2003, and its sales in Canada had grown considerably throughout the following years. Pinkette learned, however, that in Canada, unlike in the U.S. where CWL had never attempted to register LUSH for clothing, CWL has a Canadian trademark registration for LUSH for clothing.

14. Pinkette therefore commissioned a formal, independent trademark in-use investigation to determine whether CWL was indeed selling any clothing items in Canada because, if CWL is not selling clothing in Canada under the LUSH trademark, the Canadian Trademark Office should cancel CWL's registration for clothing. The investigation reported that, in addition to there being no mention on any CWL website of any clothing articles for sale, personnel at CWL had told the independent investigator that T-shirts displaying CWL's LUSH HANDMADE COSMETICS were for the store employees' uniforms only and that CWL does not sell any apparel with any LUSH trademark on them.

15. The investigation, therefore, concluded that, apart from perhaps some LUSH HANDMADE COSMETICS uniforms that it claims it sells internally to its own store employees, CWL does not sell any clothing bearing any trademark that contains the word LUSH.

16. As a result, on September 2, 2014, Pinkette filed in Canada a trademark application for LUSH for clothing and a petition requesting that the

Canadian Trademark Office investigate and cancel CWL's registration for LUSH for clothing on the grounds that CWL does not sell clothing in Canada under the LUSH trademark.

### D. CWL's Response to Pinkette's Challenge in Canada

17. In December 2014, following Pinkette's challenge in Canada, CWL filed a federal trademark application in the United States for LUSH for clothing, later given Serial No. 86/475,096. Pinkette attaches hereto as Exhibit 3 a true and correct copy of CWL's U.S. trademark application for LUSH for clothing. For its formal response to Pinkette's challenge in Canada, CWL submitted to the Canadian Trademark Office evidence of CWL's supposed sales of clothing in Canada under the LUSH trademark. Pinkette attaches hereto as Exhibit 4 a true and correct copy of CWL's responsive submission in Canada. In the submission, CWL alleges and admits that the only clothing CWL purportedly sold in Canada and the U.S. were t-shirts, tank tops, sweatshirts, and aprons it sold internally to its own retail store employees as their uniforms. (*Id.* at ¶ 11).

18. Upon information and belief, the uniforms were/are not sold to any of the retail stores' customers, nor were they intended for resale to any of the retail stores' customers.

19. As part of CWL's has recently filed federal trademark application for LUSH for clothing, CWL submitted a declaration, signed on December 9, 2014 by its attorney of record, John A. Clifford, Esq., stating under penalty of 18 U.S.C. § 1001 that it is "the owner of the trademark[] sought to be registered; the applicant [] is using the mark in commerce on or in connection with the goods[] in the application[; and] the specimen(s) shows the mark as used on or in connection with the goods[] of the application."

6

20. On March 23, 2015, the USPTO issued an office action in connection with CWL's trademark application for LUSH for clothing refusing to register the mark, finding that it would create a likelihood of confusion with Pinkette's registration for LUSH for clothing. Pinkette attaches hereto as Exhibit 5 a true and correct copy of this office action. In response, on June 10, 2015, CWL filed a petition to cancel Pinkette's registration and, shortly thereafter, a request to suspend examination of CWL's trademark application until CWL's petition to cancel is decided or otherwise resolved. Pinkette attaches hereto as Exhibit 6 a true and correct copy of CWL's petition to cancel Pinkette's U.S. trademark registration for LUSH for clothing.

21. In its petition to cancel, CWL admits that it primarily has sold its purported LUSH clothing "to employees for use while at work" and that there are no rules "in place" that limit the employees' "use of the clothing to work hours or work locations." (*Id.* at ¶ 4). CWL also admits that its only other clothing evidence is the gift wrapping it sells to wrap its cosmetics in, which it only recently began referring to as being reusable as scarves -- only after CWL had engaged in the present dispute.

22. Additionally, in both CWL's evidence submission in Canada and its petition to cancel Pinkette's U.S. trademark registration, CWL broadly claims to have sold LUSH clothing before 2003, but never presented any evidence of this. Pinkette therefore additionally contends that Pinkette's trademark use of LUSH for clothing in the U.S. (and Canada as well) is senior to any supposed trademark use of LUSH for clothing by CWL.

23. Lastly, the scant evidence Pinkette has seen of CWL's supposed sales of these uniforms demonstrates that such sales were so small as to be token or, if not token, "highly limited" in nature. That is, the evidence CWL submitted to the Canadian Trademark Office revealed that CWL's alleged sales of t-shirts and tank tops averaged no more than roughly $255 per month -- for the entire United States.

1  (*See*, Exhibit 4, at ¶¶ 17 and 19 adding up to $4600 for the 18 months of voluntary
2  reporting, and ¶ 22, in which CWL attested that these figures are representative of
3  its sales stretching back to September 2011).

4      24.    Despite the foregoing reasons to conclude that CWL has not developed
5  any exclusive trademark rights in LUSH for clothing, that CWL's uses of the term
6  LUSH are insufficient to create any likelihood of confusion, and that there is no
7  sufficient evidence to suggest that CWL is even the senior trademark user of LUSH
8  for clothing, CWL incorrectly alleges in its petition to cancel not merely that
9  Pinkette's federal registration harms CWL but also that Pinkette's commercial use
10 infringes and creates a false association with CWL's exclusive trademark rights.
11 Such allegations, despite being entirely wrong, should be adjudicated and resolved
12 in an Article III District Court, not the Trademark Trial and Appeal Board.

13     25.    These actions and opposing positions concerning the rights to the
14 LUSH trademark for clothing and to any federal trademark registration therefor
15 give rise to the following claims for relief.

## IV.   FIRST CLAIM FOR RELIEF
### Declaratory Judgment that CWL Has Not Developed
### Any Exclusive Trademark Rights for Clothing

21     26.    Pinkette hereby repeats and incorporates herein the allegations set
22 forth in paragraphs 1 through 25 above.

23     27.    CWL contends that its LUSH HANDMADE COSMETICS design on
24 its employee uniforms entitles CWL to exclusive rights in the term LUSH as a
25 trademark for clothing.

26     28.    Pinkette contends, to the contrary, that CWL's alleged use of LUSH or
27 LUSH HANDMADE COSMETICS, including that which CWL itself has alleged,
28 is legally insufficient to entitle CWL to trademark rights in the term LUSH or the

8

phrase LUSH HANDMADE COSMETICS for clothing. Pinkette contends instead that CWL's retail employee uniforms constitute, at most, point-of-sale advertisements, much like signage, for its handmade cosmetics and perfumes, and not trademark use for clothing or any clothing-related goods.

29. That is, CWL's employee uniforms are merely "items incidental to conducting" CWL's actual business. CWL's actual business is marketing and selling cosmetics, perfumes, and the like, and as such, this use on employee uniforms is not sufficient to establish exclusive trademark rights in the term LUSH for clothing -- any more than CWL's signage can establish trademark rights in LUSH for wood siding.

30. Accordingly, there exists an Article III case and controversy between CWL and Pinkette concerning whether CWL's uniforms with the mark "LUSH" qualify as trademark use sufficient for CWL to establish trademark rights in LUSH for clothing.

31. Pinkette is being harmed, and irreparably so, by CWL's contrary positions and will continue to be so harmed unless and until such CWL's actions are enjoined by judgment of this Court. These harms include CWL's actions of recently filing a competing and mutually exclusive federal trademark application for LUSH for clothing stating that it is "the owner of the trademark[] sought to be registered; the applicant [] is using the mark in commerce on or in connection with the goods[] in the application[; and] the specimen(s) shows the mark as used on or in connection with the goods[] of the application."

32. Moreover, these harms also include CWL's recently filed petition to cancel Pinkette's federal trademark registration, in which CWL alleges it is the rightful owner of LUSH for clothing. These actions have drawn a dark cloud of uncertainty over Pinkette's long-held rights to the LUSH trademark in the United States. Pinkette's trademark rights now appear to the purchasing public and to Pinkette's many retail store accounts as being challenged, causing these retail stores

to hesitate or question Pinkette's rights, question whether they might be dragged into a trademark infringement action, and question whether they might have to remove inventory from shelves or lose a valued and sought-after brand for their customers.

33. Pinkette therefore is entitled to a judgment from this Honorable Court declaring that CWL's use of the term LUSH on any clothing items is insufficient to establish trademark rights for CWL in the term LUSH for clothing. Such a determination and declaration is necessary and appropriate so that the parties can ascertain their respective rights and duties under law and equity regarding the LUSH mark in the class of clothing.

## V.  SECOND CLAIM FOR RELIEF

### Declaratory Judgment of No Likelihood of Confusion, No False Association, and No Trademark Infringement

34. Pinkette hereby repeats and incorporates herein the allegations set forth in paragraphs 1 through 33 above.

35. Through CWL's statements to Pinkette and to the USPTO, CWL contends that there is a likelihood of confusion and false association among the relevant public as a result of the coexistence of Pinkette's use of LUSH as its trademark for clothing and, either, (1) CWL's sales of its store uniforms that say LUSH HANDMADE COSMETICS to CWL's own store employees; (2) CWL's selection of gift wrapping options used to wrap purchased cosmetics and perfumes in (which CWL now, after engaging in the present dispute, market as being reusable as scarves); and/or (3) CWL's sales of LUSH cosmetics, perfumes, and related goods.

36. Pinkette contends the opposite. Pinkette contends that there is no likelihood of confusion and no false association resulting from the coexistence of

10

Pinkette's use of LUSH as its trademark for clothing and (1) CWL's sales of its store uniforms that display the LUSH HANDMADE COSMETICS logo; (2) CWL's selection of gift wrapping options; or (3) CWL's sales of LUSH cosmetics, perfumes, and related goods.

37. CWL has not developed exclusive trademark rights in the term LUSH for clothing by this alleged use of its cosmetics and perfumes logo, LUSH HANDMADE COSMETICS, on its retail store employee uniforms. Even assuming for argument's sake that CWL's uniforms sales in the United State predate Pinkette's trademark use and that CWL's uniforms sales in the United States were sufficient and sufficiently continuous to maintain trademark rights throughout this time, CWL concedes that its alleged sales of its uniforms are limited to its own store employees. These are entirely internal sales -- or possibly no real sales at all -- and the uniforms function as point of sale advertisements and no more, like numerous other pieces of signage typically inside such retail stores. CWL also places its LUSH HANDMADE COSMETICS on its store windows and signage, but this does not entitle it to exclusive trademark rights in LUSH for sheet glass or sign boards.

38. As for CWL's gift wrapping, Pinkette is not aware of any reference to "scarves" until very recently, here in early 2015, which is after CWL engaged in this dispute. Earlier this year, CWL began saying in its marketing that its gift wrapping can be reused as scarves, but this only supports Pinkette's position that CWL's uniforms are insufficient and that CWL had likewise felt this all along -- until Pinkette challenged CWL's Canadian trademark registration for LUSH for clothing. Upon information and belief, CWL's gift wraps were never marketed as being reusable as scarves until after CWL engaged in the present dispute. This new marketing is too late to change the trademark rights involved in this dispute.

39. This new marketing is also too little. Most products, packaging, and even wrapping are reusable. Reuse is encouraged by all sorts of companies,

organizations, and governments. And, once an article is reusable, it is probably reusable as makeshift clothing of one type or another. This is not sufficient to give rise to exclusive trademark rights for CWL in the term LUSH for clothing.

40. As for CWL's sales of cosmetics, perfumes, or related goods under LUSH HANDMADE COSMETICS or any other trademark containing the term LUSH, Pinkette contends that there is no likelihood of confusion and no false association. In fact, CWL's failure to uncover any instances of confusion or to raise any likelihood of confusion allegations for over a decade of coexistence in their respective fields of goods (clothing versus cosmetics and perfumes) demonstrates that there is no likelihood of confusion and no false association.

41. Moreover, the fact that CWL has failed to challenge Pinkette's use of LUSH for clothing, despite the apparent coexistence of Pinkette's use and CWL's use since 2003, reveals that CWL itself never did and does not now believe there really is any likelihood of confusion or false association between the two marks, given their respective uses.

42. Furthermore, the miniscule and limited sales that CWL has alleged ($4600 for one 18-month stretch and that this is "representative of" its sales back to September 2011) are insufficient to create any significant likelihood of confusion.

43. Accordingly, there exists an Article III judiciable case and controversy between CWL and Pinkette concerning whether there is any likelihood of confusion or false association between Pinkette's LUSH trademark for clothing and CWL's use of LUSH on its employees' uniforms, gift wrapping, or cosmetics or perfume goods, or any trademark infringement by Pinkette.

44. The harms to Pinkette from CWL's actions complained of above apply equally here.

## VI. THIRD CLAIM FOR RELIEF

## Declaratory Judgment that CWL is Barred by Laches from Alleging Likelihood of Confusion or False Association Against Pinkette

45. Pinkette hereby repeats and incorporates herein the allegations set forth in paragraphs 1 through 44 above.

46. In CWL's petition to cancel Pinkette's federal trademark registration, CWL alleged -- for the first time -- that the concurrent use of Pinkette's federally registered LUSH trademark for clothing and CWL's purported use on clothing creates a likelihood of confusion.

47. Pinkette, by contrast, contends that Pinkette has been publicly and commercially using LUSH for clothing since at least July 2003 and that CWL is barred at this late date by laches from raising a claim of likelihood of confusion between CWL's employee uniforms that say LUSH HANDMADE COSMETICS (and CWL's gift wrap, which CWL only now markets as being reusable as scarves) and Pinkette's use of LUSH as its trademark for clothing.

48. Pinkette contends that CWL's choice not to raise any likelihood of confusion allegations or allegations of false association for well over a decade of coexistence in their respective fields of goods bars it under the doctrine of laches from asserting at this late date that there is likelihood of confusion or association.

49. Pinkette contends that CWL should be barred by laches for choosing not to assert its purported rights, if any, year after year for well over a decade while Pinkette has expended considerable time, effort, investment, and resources in promoting Pinkette's business and LUSH trademark.

50. Upon information and belief, CWL has been aware and on notice of Pinkette's LUSH brand clothing for many years since Pinkette was being prominently advertised and sold in large quantities in stores all throughout the U.S. starting in 2003. In fact, the USPTO published Pinkette's trademark application

when Pinkette filed it back on May 11, 2009, and published it for opposition on April 27, 2010 -- which was over five years ago. Trademark owners are obliged to monitor and police their trademark rights, including when applications that they may find objectionable appear published by the USPTO for a period of time set by federal statute for the express purpose of others coming forward to prevent registration.

51. CWL never did this. Upon information and belief, it watched and allowed Pinkette's business, marketing, and sales of LUSH clothing to grow greatly on a nationwide stage, and it watched and allowed Pinkette's application to pass the statutory opposition period and to register.

52. Accordingly, there exists an Article II actual case and controversy between CWL and Pinkette because procedural fairness dictates that CWL should be barred from alleging likelihood of confusion against Pinkette due to the inordinate delay and failure to timely assert its alleged rights.

53. The harms to Pinkette from CWL's actions complained of above apply equally here.

## VII. FOURTH CLAIM FOR RELIEF
### Declaratory Judgment That CWL's
### Trademark Application and Cancellation Proceeding Are Improper

54. Pinkette hereby repeats and incorporates herein the allegations set forth in paragraphs 1 through 53 above.

55. In CWL's recently filed federal trademark application for LUSH for clothing, CWL attested through a declaration under the penalties listed in 18 U.S.C. § 1001 that it is the owner of the trademark sought to be registered; it is using the mark in commerce on or in connection with the goods in the application; and the specimens show the mark as used on the goods listed in the application.

56. In CWL's petition to cancel Pinkette's federal trademark registration, CWL alleged -- for the first time -- that the concurrent use of Pinkette's federally registered LUSH trademark for clothing and CWL's purported use on clothing creates a likelihood of confusion.

57. Pinkette, by contrast, contends that Pinkette is the sole and senior user of the LUSH trademark for clothing in several countries including, for purposes of this complaint, the United States. Pinkette contends that it is the only entity entitled to a federal trademark registration in the United States for LUSH for clothing.

58. None of CWL's uses known to Pinkette, including those CWL itself has alleged, does not entitle and has never entitled CWL to any trademark rights in any LUSH mark for clothing.

59. Pinkette contends, therefore, that the declaration CWL submitted by way of its trademark attorney, Mr. Clifford, is not correct, whether knowingly or not; that no trademark registration can issue therefrom; and that the application itself must be withdrawn.

60. Pinkette contends that CWL's petition to cancel is likewise improper and must be withdrawn; that it is inconsistent with CWL's failure to raise any likelihood of confusion allegations for well over a decade of coexistence in their respective fields of goods (clothing versus cosmetics and perfumes).

61. Accordingly, Pinkette contends that CWL's federal trademark application for LUSH for clothing is improper, that the declaration submitted with CWL's application is improper; and that CWL's petition to cancel is improper.

62. Accordingly, there exists an Article II actual case and controversy between CWL and Pinkette as to whether CWL's trademark application and petition to cancel should be withdrawn, refused, or denied.

63. The harms to Pinkette from CWL's actions complained of above apply equally here.

## VIII. **PRAYER FOR RELIEF**

WHEREFORE, Pinkette prays that this Honorable Court issue a declaratory judgment that:

1. confirms Pinkette's unfettered right to commercially use LUSH as its trademark for clothing;

2. CWL's use of LUSH on retail store employee uniforms, sold only internally to its own store employees, does not entitle CWL to exclusive rights in LUSH as a trademark for clothing;

3. there is no trademark infringement, no false association, and no likelihood of confusion between Pinkette's use of LUSH on clothing and CWL's use of LUSH on its own store employee uniforms;

4. there is no trademark infringement, no false association, and no likelihood of confusion between Pinkette's LUSH clothing and CWL's use of LUSH on CWL's gift wrapping options used to wrap purchased cosmetics, perfumes, and related goods;

5. there is no trademark infringement, no false association, and no likelihood of confusion between Pinkette's LUSH clothing and CWL's use of LUSH on its cosmetics, perfumes, and related goods;

6. CWL shall be barred under the doctrine of laches from asserting against Pinkette any likelihood of confusion, no false association, and no trademark infringement between any of CWL's LUSH goods or services and Pinkette's use of LUSH as its trademark for clothing;

7. CWL shall be enjoined from using the term LUSH as a trademark for clothing or otherwise creating any likelihood of confusion, false association with, or trademark infringement of Pinkette's LUSH trademark for clothing;

8. CWL's U.S. Trademark Application Serial No. 86/475,096 is improper, and that CWL must expressly withdraw the application;

9. the USPTO shall deem this U.S. Trademark Application Serial No. 86/475,096 abandoned or otherwise terminated;

10. CWL's petition to cancel, initiating USPTO cancellation proceeding No. 92061660, is improper, and that CWL must expressly stipulate to dismissal of the cancellation proceeding;

11. the USPTO shall dismiss this pending cancellation proceeding No. 92061660; and

12. Pinkette is entitled to its attorneys' fees and costs incurred in this dispute; and to such other and further legal and equitable relief as the Court may deem appropriate.

Respectfully submitted,

CISLO & THOMAS LLP

Dated: June 30, 2015     /s/Kelly W. Cunningham
Kelly W. Cunningham, Esq.
Daniel M. Cislo, Esq.

Attorneys for Plaintiff
Pinkette Clothing, Inc.

T:\15-30422\Complaint for declaratory judgment re LUSH.docx

# **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Proceeding, Plaintiff Pinkette Clothing, Inc. hereby demands a trial by jury on all issues raised by the Complaint that are triable by jury.

                                                Respectfully submitted,

                                                CISLO & THOMAS LLP

Dated: June 30, 2015       /s/Kelly W. Cunningham
                                              Kelly W. Cunningham, Esq.
                                              Daniel M. Cislo, Esq.

                                              Attorneys for Plaintiff
                                              Pinkette Clothing, Inc.

T:\15-30422\Complaint for declaratory judgment re LUSH.docx