1  LTL ATTORNEYS LLP
2  James M. Lee (SBN 192301)
   james.lee@ltlattorneys.com
3  David A. Crane (SBN 305999)
   david.crane@ltlattorneys.com
4  300 S. Grand Ave., 14th Floor
5  Los Angeles, California 90071
   Tel.: 213-612-8900 / Fax: 213-612-3773
6
7  Attorneys for Plaintiff/Counter-Defendant
8  Pinkette Clothing, Inc.

9
                **UNITED STATES DISTRICT COURT**
10
                **CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| 12  PINKETTE CLOTHING, INC., | CASE NO. 15-CV-4950 SJO (AJWx) |
| 13         Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE HIBBARD AND ISAACSON** |
| 14      v. | |
| 15  COSMETIC WARRIORS LIMITED, et al., | Hearing |
| 16 | |
| 17         Defendants. | Date:    January 24, 2017 |
| 18 | Time     9:00 a.m. |
| 19 | Crtrm:   10C |
| 20  AND RELATED COUNTERCLAIMS | Judge:   Hon. S. James Otero |
| 21 | Pretrial Conf. Date:   January 17, 2017 |
| 22 | Trial Date:            January 24, 2017 |

23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to the Central District of California's ADR Program, the parties mediated this dispute on June 20, 2016 in front of a neutral selected from the Court's Mediation Panel.  *See* Dkts. 28, 38.  As part of that process, the parties exchanged mediation statements.  During expert discovery, Drs. Hibbard and Isaacson, experts for Plaintiff Pinkette Clothing, Inc. ("Pinkette"), reviewed the mediation statement of Defendant Cosmetic Warriors Limited ("CWL"), but <u>did not rely upon it</u> in forming any of their opinions.  Pinkette's experts disclosed this fact on their reports, which were served in early October 2016.  Now, over two months later, CWL argues for the first time that Pinkette's experts should be excluded as expert witnesses solely on the basis that they reviewed CWL's mediation statement, despite their lack of reliance on it.

CWL's inexplicable delay in bringing this motion suggests that it knows it has not been harmed by this disclosure, and further suggests that this motion is nothing more than an attempt to maximize potential prejudice to Pinkette by waiting until the last minute when there is insufficient time to implement the simple remedy of substitute experts.  This is confirmed by the fact that CWL's motion cavalierly flouts the very mediation-confidentiality rules that it feigns interest in vindicating.

Moreover, CWL rests its claim to the extraordinary relief it requests on three unpublished district court opinions from outside of California.  That, however, is not because there is no better authority on point, but rather because CWL presumably knows that its motion is procedurally improper under the governing rules, which require that alleged violations of the court's mediation process be brought before the mediator and *not* presented to the presiding judge.  CWL's motion is also legally insufficient under Ninth Circuit precedent (which CWL has neglected to cite).  CWL's failure to discuss these authorities (or to even bring

1   them to the Court's attention) constitutes a violation of Federal Rule of Civil

2   Procedure 11(b), and underscores that its motion is nothing more than an improper

3   attempt to harass Pinkette. Accordingly, Pinkette respectfully requests that the

4   Court deny CWL's motion in its entirety.

5   **II.    ARGUMENT**

6           **A.    In bringing this fabricated dispute to the Court's attention, CWL**

7                   **has violated the very mediation rules it now feigns interest in**

8                   **upholding.**

9           CWL's motion is premised on the notion that it is deeply concerned with

10  upholding the sanctity of mediation statements.   The truth is that CWL is

11  manufacturing a dispute, which it intentionally delayed in raising so as to

12  maximize the prejudice to Pinkette should its gambit be successful.   CWL's

13  inexplicable delay is good evidence of both the lack of harm and its true intent.

14  Equally revelatory is the fact that CWL's motion itself cavalierly flouts the very

15  mediation-confidentiality rules CWL claims to be interested in vindicating.

16          CWL's allegations arise in the context of a mediation conducted before a

17  neutral selected from the Central District of California's Mediation Panel.

18  Therefore, General Order No. 11-10 governs.   *See* Consolidated Declaration of

19  David Crane ¶ 5, Exh. D ("General Order 11-10") § 1.1 ("This General Order []

20  governs the elective and presumptive referral of certain actions to the Alternative

21  Dispute Resolution (ADR) Program for mediation with a neutral from the

22  Mediation Panel . . . appointed by the Court.").   Amongst other things, General

23  Order 11-10 provides for the administration of the ADR Program, *see id.* § 2, the

24  qualifications of the mediators, *see id.* § 3, the referral of cases to the ADR

25  Program, *see id.* § 5, the procedures for conducting the mediation, *see id.* § 8, the

26  confidentiality of the proceedings, *see id.* § 9, and a dispute resolution process for

27  alleged violations of General Order 11-10, *see id.* § 10.

28          As General Order 11-10 makes clear, this dispute is not properly before this

**OPPOSITION TO CWL'S MIL NO. 4 TO EXCLUDE HIBBARD AND ISAACSON**

1   Court.  In particular, Section 10 of General Order 11-10 provides that "a complaint
2   alleging that any person or party has materially violated this Order may be
3   presented informally to the ADR Program Director."  *Id.* § 10.1.  Otherwise, "[a]
4   formal complaint alleging that any person or party has materially violated this
5   Order must be presented in writing (not electronically) *to the ADR Program*
6   *Director*, who will refer the matter *to the ADR Judge*."  *Id.* §10.2 (emphases
7   added).  Thereafter, if the ADR Judge determines that the matter warrants further
8   proceedings, and if the dispute is not informally resolved, "*the ADR Judge . . .*
9   shall take appropriate action," including potentially "issu[ing] an order to show
10  cause why sanctions should not be imposed. . . . The ADR Judge will afford all
11  interested parties an opportunity to be heard before deciding whether to impose
12  sanctions."  *Id.* § 10.3 (emphasis added).

13      CWL has neither filed a formal complaint with the ADR Program Director
14  nor sought to informally resolve this dispute.  Rather, in an attempt to circumvent
15  the specific dispute resolution process set forth in General Order 11-10 and to
16  improperly impugn Pinkette, CWL has chosen to file a motion directly with this
17  Court.  The Court should not permit CWL to flout this Court's orders and the
18  procedures agreed upon by the parties, and on that basis alone should deny CWL's
19  motion.

20      The Mediation Confidentiality Agreement, General Order 11-10, and the
21  Local Rules all further confirm that CWL's motion is entirely improper.
22  Specifically, the Mediation Confidentiality Agreement provides that "[n]o written
23  or oral communication made by any party, attorney, mediator or other participant
24  in a mediation in the above-named case may be used *for any purpose in any*
25  *pending or future proceeding* unless all parties, including the mediator, so agree."
26  Dkt. 124-2, Scobie Decl. Ex. A at ¶ 1 (emphasis added) (signed by Merchant &
27  Gould).  Similarly, General Order 11-10 provides that "[m]ediation statements
28  *must not be filed and the assigned judge shall not have access to them*"; "the

OPPOSITION TO CWL'S MIL NO. 4 TO EXCLUDE HIBBARD AND ISAACSON

contents of the written mediation statements . . . ***shall not be . . . disclosed to the assigned judges***"; and any complaint for a violation of General Order 11-10 "***must neither be filed nor disclosed to the assigned judge***."  General Order 11-10 §§ 8.4(b), 9.1, and 10.2 (emphases added).  Local Rule 16-15.8 provides the same.  *See* L.R. 16-15.8(a) ("'Confidential information' ***shall not be . . . disclosed to the assigned judges*** . . . .") (emphasis added).  Indeed, "[o]ne purpose of committing [the] responsibility [of hearing and determining complaints alleging violations of the mediation rules] to one designated [] judge is to preserve the confidentiality of ADR communications to the fullest extent possible-and to assure litigants that no such communications will be disclosed to any judge who could exercise power of the parties' rights in the underlying case."  *In re Prohibition Against Disclosing ENE Commc'ns. to Settlement Judges*, 494 F. Supp. 2d 1097, 1097 n.1 (N.D. Cal. 2007) (discussing analogous rules).

CWL not asked Pinkette for permission to use its mediation brief to support its motion, nor has Pinkette authorized such use.  Yet CWL has not only improperly brought this mediation-related dispute before this Court, but also has unilaterally decided to file its mediation statement ***directly with this Court***.  *See* Dkt. 124-2, Scobie Decl. Ex. B.  The Court should not condone CWL's flagrant and willful disrespect of the confidentiality provisions of General Order 11-10, the Local Rules, and the Mediation Confidentiality Agreement.

In sum, by the very fact that CWL has filed this motion (along with its mediation statement), CWL has violated the provisions of General Order 11-10, the Local Rules, and the Mediation Confidentiality Agreement.  As CWL should be well aware, this dispute should be resolved ***only*** by the ADR Judge and not this Court.  Therefore, the Court should deny CWL's motion. *Accord Dixon v. City of Oakland*, Case No. 12-cv-5207 DMR, 2014 WL 6951260, at *6 (N.D. Cal. Dec. 8, 2014) (admonishing the parties for filing confidential mediation materials in violation of an analogous rule, refusing to consider the parties' arguments, and

1    striking the parties' briefs); *Postlewaite v. Wells Fargo Bank N.A.*, Case No. 12-cv-
2    4465 YGR, 2014 WL 4768386, at *5 n.9 (N.D. Cal. Sept. 24, 2014) (noting that a
3    motion filed by one of the defendant had been denied "because it ignored the
4    process set forth in the Court's ADR Local Rules," and that even the "very filing
5    of that motion violated the rules, because [the defendant] filed it before the
6    presiding judge in the case instead of the ADR [] Judge.").

7
8

**B.  Even if the Court were inclined to decide this dispute, the harsh sanction of disqualification is not warranted.**

9    Even if the Court were inclined to decide CWL's motion, it is clear that,
10    under Ninth Circuit law, the harsh sanction of disqualification of Pinkette's experts
11    is not warranted under the facts and circumstances giving rise to this dispute.[1]

12    "Federal courts have the inherent power to disqualify expert witnesses to
13    protect the integrity of the adversary process, protect privileges that otherwise may
14    be breached, and promote public confidence in the legal system." *Hewlett-*
15    *Packard Co. v. EMC Corp.*, 330 F. Supp. 2d 1087, 1092 (N.D. Cal. 2004) (citation
16    omitted); *see also Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)
17    ("A district court is vested with broad discretion to make discovery and evidentiary
18    rulings conducive to the conduct of a fair and orderly trial. . . .," including
19    disqualifying expert testimony.") (citations omitted).  There is no bright-line rule
20    for expert disqualification. *Multimedia Patent Trust v. Apple Inc.*, Case No. 10-cv-
21    2618-H (KSC), 2012 WL 12868248, at *2 (S.D. Cal. Aug. 27, 2012).  However,
22    "disqualification is a drastic measure that courts should impose only hesitantly,
23    reluctantly, and rarely." *Hewlett-Packard*, 330 F. Supp. 2d at 1092 (citations
24    omitted).

25    A consideration of the relevant factors reveals that disqualification would be
26

27
28

[1] Notably, in addition to having failed to mention the ADR provisions governing this dispute, CWL has also failed to cite or discuss any authority that would permit the Court to grant the extraordinary relief it seeks.

**OPPOSITION TO CWL'S MIL NO. 4 TO EXCLUDE HIBBARD AND ISAACSON**

1    inappropriate and grossly disproportionate to the severity of the alleged
2    confidentiality breach, especially in light of CWL's own confidentiality breach.

3        *First*, although Pinkette does not dispute the general importance of
4    maintaining the confidentiality of mediation materials, any prejudice that could
5    inure to CWL under the circumstances of the breach necessarily would be limited.
6    Notably, the experts to whom Pinkette provided CWL's mediation statement are
7    *rebuttal experts* retained expressly for the purpose of examining the specific
8    opinions proffered by CWL's experts.  Thus, because these experts' opinions are
9    limited to the subject matter raised by CWL's experts, there is little risk that they
10   would or even could improperly rely upon anything in the mediation statement.

11       Indeed, as acknowledged by CWL, both experts confirmed at their
12   depositions that they did not in fact rely on any content in the mediation statement
13   in forming their opinions.  *See* Dkt. 124-2, Scobie Decl. Ex. D at 33:17-23 ("Q:
14   Did you rely on [CWL's mediation statement] in preparing these opinions?  A: No.
15   Q: And why not?  A: I read those for . . . . I read them just for background . . . .");
16   Ex. E at 58:5-11 ("A: . . . I don't believe that I relied upon the mediation brief to
17   form part of my opinions in this matter.").[2]  And CWL can offer no evidence that
18   would suggest that it suffered any actual prejudice, instead raising only vague and
19   unspecified concerns that the review of its mediation statement somehow "may
20   have consciously or unconsciously shaped Pinkette's Experts' evaluations."  Dkt.
21   124 at 2.  It is thus apparent that CWL has suffered little, if any, prejudice from the
22   disclosure of its mediation statement.

23       *Second*, the disclosure by Pinkette of CWL's mediation statement was
24

25   ─────────────────
     [2] CWL notes that Dr. Isaacson cited its mediation statement for a comment
26   offered in his report.  *See* Dkt. 124 at 2.  This citation, however, actually *supports*
     that CWL suffered no prejudice as a result of having its mediation statement shown
27   to Dr. Isaacson—the citation refers to a fact that not only is in the public record,
     but that CWL itself highlighted in the public version of its opposition to Pinkette's
28   motion for summary judgment, *see* Dkt. 94 at 5.

                                        6

1  clearly inadvertent.  Indeed, both Dr. Hibbard and Dr. Isaacson candidly disclosed
2  on their expert reports that they received CWL's mediation statement, and further
3  admitted this fact at their depositions.  Pinkette has acted with all candor, and there
4  is no suggestion that it disclosed CWL's mediation statement in bad faith or for
5  any improper purpose.  Under these circumstances, the Court should not exclude
6  Pinkette's experts under its inherent power to impose sanctions.  *See In re Dyer*,
7  322 F.3d 1178, 1196 (9th Cir. 2003) ("Before imposing sanctions under its
8  inherent sanctioning authority, a court must make an explicit finding of bad faith or
9  willful misconduct."); *Fink v. Gomez*, 239 F.3d 989, 993–94 (9th Cir. 2001)
10  ("[M]ere recklessness, without more, does not justify sanctions under a court's
11  inherent power"; rather, sanctions are available only if the court "specifically finds
12  bad faith or conduct tantamount to bad faith.").

13      *Finally*, it would be fundamentally unfair to exclude Pinkette's experts at
14  this late stage in the litigation, on the eve of trial.  **CWL knew of the disclosure as**
15  **early as October 5, 2016**, when Pinkette served its expert reports, and confirmed
16  this no later than October 24, 2016, after questioning Drs. Hibbard and Isaacson on
17  this issue at their depositions.  Yet CWL chose to sit on its purported concerns for
18  *nearly two months*, until Pinkette would be left with few if any options for curing
19  any alleged prejudice suffered by CWL.

20      CWL's delay in raising this issue suggests that it fabricated this dispute in an
21  attempt to gain an unfair advantage over Pinkette and not out of any actual concern
22  regarding the confidentiality breach.  Indeed, it is undeniable that if Pinkette's
23  experts were excluded at this stage, Pinkette would be severely and unduly
24  prejudiced, being left with either only last-minute replacement options (the Court
25  permitting)[3] or no expert testimony whatsoever to rebut that of CWL's experts.
26

27      [3] If the Court were to exclude Pinkette's experts, Pinkette respectfully requests an
28  opportunity to retain new experts and a continuance of the trial date to complete
    any related discovery.

1    The interests of justice do not favor exclusion under these circumstances.  *See*
2    *Hewlett-Packard*, 330 F. Supp. 2d at 1095 (noting that, in deciding whether to
3    disqualify an expert, a court should consider "whether the opposing party will be
4    unduly burdened by having to retain a new expert," and that "[c]onsideration of
5    prejudice is especially appropriate at late stages in the litigation, at which time
6    disqualification is more likely to disrupt the judicial proceedings") (internal
7    quotations and citations omitted); *Multimedia Patent Trust*, 2012 WL 12868248, at
8    *2 (declining to disqualify the plaintiff's experts because the plaintiff "would be
9    disadvantaged if its expert witnesses were disqualified at this [late] stage in the
10   case").

11           In sum, although this motion is not properly before this Court, the
12   circumstances and nature of the alleged confidentiality breach would not, in any
13   case, warrant the exclusion of Pinkette's experts.  *Accord McLean v. Air Methods*
14   *Corp., Inc.*, Case No. 1:12-cv-241-jgm, 2014 WL 280343, at *7 (D. Vt. Jan. 24,
15   2014) (declining to exclude the defendant's experts for having been provided
16   confidential mediation materials because the disclosure was inadvertent, nothing
17   confidential was actually disclosed, and neither expert relied on the materials in
18   forming their opinions, and noting that "[t]he extreme sanction of striking both
19   experts from testifying, based on an apparent mistake, is not warranted in this
20   particular case"); *Claude Worthington Benedum Found. v. Harley*, Case No. 12-cv-
21   1386, 2014 WL 3846047, at *5 (W.D. Pa. Aug. 5, 2014) (declining to sanction the
22   defendants for providing their expert with confidential mediation statement
23   because the disclosure was not in bad faith and the plaintiff failed to explain how it
24   had been prejudiced by the disclosure).

25   **III.    CONCLUSION**

26           CWL knows that it has suffered no prejudice from the inadvertent disclosure
27   of its mediation statement to Pinkette's rebuttal experts, which is why it waited
28   until the eve of trial to raise its purported concerns.  CWL presumably knows that

8

1   its motion is procedurally improper, yet brought it anyway to harass and impugn

2   Pinkette before this Court.   CWL cannot have it both ways—on the one hand,

3   claiming that Pinkette violated the confidentiality provisions of the parties'

4   mediation agreement, while on the other, *itself violating those very same*

5   *provisions (and more)*.   Indeed, Pinkette has been unfairly prejudiced by the very

6   filing of this motion.   For all these reasons, the Court should deny CWL's motion.

7

8   Dated:  December 23, 2016                    LTL ATTORNEYS LLP

9

10                                              By: /s/ James M. Lee

11                                              James M. Lee
                                                Attorneys for Plaintiff/Counter Defendant
12                                              Pinkette Clothing, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO CWL'S MIL NO. 4 TO EXCLUDE HIBBARD AND ISAACSON**