Wayne W. Call, Bar No. 56676
  wcall@calljensen.com
Scott P. Shaw, Bar No. 223592
  SShaw@calljensen.com
Deborah A. Gubernick, Bar No. 242483
  DGubernick@calljensen.com
Samuel G. Brooks, Bar No. 272107
  SBrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Ian G. McFarland, *pro hac vice*
  imcfarland@merchantgould.com
MERCHANT & GOULD P.C.
9717 Cogdill Road, Suite 101
Knoxville, TN 37932-3322
Tel.: (865) 380-5990
Fax: (865) 380-5999

John A. Clifford, *pro hac vice*
  jclifford@merchantgould.com
Heather J. Kliebenstein, *pro hac vice*
  hkliebenstein@merchantgould.com
Rachel Z. Scobie, *pro hac vice*
  rscobie@merchantgould.com
Linhda Nguyen, Bar No. 301157
  lnguyen@merchantgould.com
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402-2215
Tel.: (612) 371-5228
Fax: (612) 332-9081

Attorneys for Defendant Cosmetic Warriors Limited

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PINKETTE CLOTHING, INC., a California corporation, | Case No.  15-CV-04950-SJO-AJW |

| | |
|---|---|
| 1 | Plaintiff, |
| 2 | |
| 3 | vs. |
| 4 | COSMETIC WARRIORS LIMITED, |
| 5 | believed to be a United Kingdom limited company doing business as LUSH |
| 6 | HANDMADE COSMETICS, and DOES 1-9, inclusive, |
| 7 | |
| 8 | Defendants. |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY, REPORT, AND OPINIONS OF EXPERT WITNESS DR. LEON KAPLAN**

Date: January 24, 2017
Time: 9:00 a.m.
Place: 10C

Complaint Filed: June 30, 2015
Trial Date: January 24, 2017

## I. Introduction.

The Court should allow the testimony of Cosmetic Warriors Limited's ("CWL") consumer survey expert, Dr. Leon B. Kaplan ("Dr. Kaplan"), because it is relevant and reliable and will aid the trier of fact. Dr. Kaplan's testimony establishes that the relevant consuming public is likely to believe, for trademark relevant reasons, that: (1) Plaintiff Pinkette Clothing, Inc.'s ("Pinkette") LUSH branded clothing website was from the same company as CWL's LUSH website, (2) that the two websites were from companies that were affiliated or connected, or (3) that Pinkette's Lush website was approved, endorsed or sponsored by CWL's LUSH brand. Dr. Kaplan is qualified as an expert on the topic of consumer perception surveys by virtue of his knowledge, education, and experience. Pinkette does not suggest otherwise. Rather than conduct its own study, Pinkette merely criticizes CWL's consumer study. Pinkette certainly could have conducted its own study. Moreover, Pinkette's criticisms are misplaced. Kaplan's likelihood of confusion survey is based on the universally accepted Squirtco[1] methodology, and his conclusions result from the reliable application of the Squirtco methodology to the facts of this case. The Court should deny Pinkette's motion to exclude Kaplan.

## II. Rule 702 And The *Daubert* Standard.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which explains: a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify if: (a) the expert's knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert reliably applies the principles and methods to the facts of the case. Fed. R. Evid. 702. Under Rule 403, an expert's testimony may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Doubts concerning whether an expert's testimony will be

---

[1] *Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1089 n.4, 1091 (8th Cir. 1980) (assessing likelihood of confusion through survey analysis).

useful should be resolved in favor of admissibility. *In re Flashcom, Inc. v. Communs Ventures III, LP (In re Flashcom, Inc.)*, 503 B.R. 99, 124 (C.D. Cal. 2013); *see also Loral Infared & Imaging Sys. v. ERA Helicopters*, No. 94-55821, 1997 U.S. App. LEXIS 14850, at *4 (9th Cir. June 17, 1997).

### III. Dr. Kaplan's Survey Is Admissible Because Dr. Kaplan Is Qualified As An Expert And Because His Survey Is Based On A Sound Methodology.

CWL retained Dr. Kaplan to commission a study to test whether there is a measurable level of confusion between Pinkette's LUSH brand and CWL's LUSH brand. Dr. Kaplan is a highly experienced survey expert and consumer psychologist. (Consolidated Decl. of Kevin Bringuel dated Dec. 13, 2016 ("Bringuel Decl.") Ex. D at 24-29.) In 1979, Dr. Kaplan founded Princeton Research & Consulting Center, Inc., and he remains President today. (*Id*. at 24.) Dr. Kaplan has been working as a survey designer and expert for at least forty-one years. (*See id*.; Decl. of Heather J. Kliebenstein ("Kliebenstein Decl.") Ex. 13 at 10:4-11:4.) His work has never been excluded by a court. (Decl. of Dr. Leon Kaplan ¶ 4.)

Dr. Kaplan's proposed testimony is summarized in his expert report entitled "A Study of the Likelihood of Confusion Between Cosmetic Warriors Ltd. and Pinkette Clothing Inc." (the "Kaplan Study"). (Bringuel Decl. Ex. D at 1.) The studied population consisted of women between the ages of 18-35 years old who are likely to use the internet to get information about women's contemporary clothing in the next year. This population definition is not challenged by Pinkette as it is Pinkette's targeted adult population. In the study, qualified respondents were first shown the CWL LUSH website (www.lushusa.com). (*Id*. at 5; Kliebenstein Decl. Ex. 14.) Then, after a series of distracter questions, respondents were shown an array of three website listings they might encounter if they did an online search for women's clothing: www.roxy.com, www.lushclothing.com and www.lacoste.com. (Bringuel Decl. Ex. D at 5-6.) In the control cell, www.lushclothing.com was replaced with www.luxusclothing.com which was identical in all respects except for substituting Luxus for Lush. (*Id*. at 6.) Respondents were encouraged to click on links if that was what they normally would do. (*Id*. at 12-13.)

Clicking on a link would take the respondent to the homepage for Roxy, Lush Clothing, or Lacoste (in the control group, a link would lead to Luxus Clothing instead of Lush Clothing). (*Id.*; Kliebenstein Decl. Exs. 15-18.)

Respondents were then asked questions relating to source confusion. (Bringuel Decl. Ex. D at 13-15.) 366 interviews passed quality-control measures, and 183 respondents saw the test cell (www.lushclothing.com) and 183 respondents saw the control cell (www.luxusclothing.com). (*Id.* at 18.) Dr. Kaplan's study found that "over one in three (36.7%) were confused into believing that the Lush Clothing website was for the same company as the Lush Cosmetics website or the two websites were for companies that were affiliated or connected or the Lush Clothing website was approved, endorsed or sponsored by Lush Cosmetics, for trademark relevant reasons." (*Id.* at 3-4.) Some excerpts from respondents include:

- Same name
- It was called lush beauty products if I'm not mistaken I figure both having the name lush means same company
- They are both called Lush. I would wonder if Lush Clothing is part of Lush
- The same name but different products
- I thought the first home page was luch (*sic*) cosmetics so i assume they are linked possibly? Thought the names were similar
- Also related to Lush Cosmetics, same company owns them both.
- Both companies are named Lush. It just makes me think they have different categories that they sell.

(*Id.* at 20.) This study, conducted according to accepted principles and standards, is probative of a likelihood of confusion in this case.

## IV. Pinkette's Cricitisms Of The Kaplan Survey Go To The Weight Of The Evidence Accorded To The Survey, Not Admissibility.

"It is notoriously easy for one survey expert to appear to tear apart the methodology of a survey taken by another." 6 McCarthy on Trademarks and Unfair Competition § 32:178 (4th ed.). As a result, technical deficiencies in survey methodology go to the weight of the evidence accorded to the survey, not to the survey's admissibility. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (methodology bears on weight not admissibility); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1262-63 (9th Cir. 2001) (issues of methodology and

survey design go to the weight not admissibility); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 & n.8 (9th Cir. 1997) (same); McCarthy at §§ 32:158, 32:178.  Here, Pinkette's only objection stems from Dr. Kaplan's methodology and survey design, issues that go to the weight of his survey not admissibility.  Pinkette's objections do not support exclusion and are, at best, proper subjects for cross examination.

### A. Online Surveys Are Commonly Accepted.

Underlying Pinkette's criticisms is the online nature of the Kaplan Study.  But online surveys are a commonly-accepted way to survey consumers and evaluate likelihood of confusion. *E.g.*, *Fortune Dynamic, Inc.*, 618 F.3d at 1037-38 (district court erred in excluding internet survey because flaws in survey, including fact it was conducted over internet thereby failing to replicate real world conditions, went to weight); *His & Her Corp. v. Shake-N-Go Fashion, Inc.*, No. 2:11-cv-05323, 2015 U.S. Dist. LEXIS 44874, at *12-13 (C.D. Cal. March 30, 2015) (admitting internet survey and finding methodology critiques went to weight); *Active Sports Lifestyle USA LLC v. Old Navy, LLC*, No. 12-00572, 2013 U.S. Dist. LEXIS 190005, at *39, 48 (admitting internet survey); *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1115-16 (W.D. Wash. 2007) (same); McCarthy § 32.165.25.  The online format of the Kaplan Study is appropriate given the prevalence of the internet today.  An online survey is particularly appropriate in this case because both parties market to their customers online, at www.lush.com, www.lushusa.com and www.lushclothing.com, respectively.

### B. Dr. Kaplan's Selection Of The Squirtco Methodology Is Appropriate.

In general, there are two court-endorsed survey formats: the Eveready format and the Squirtco format.  With the Eveready format, a respondent is shown an exemplar of the defendant's branded product, and then asked "who makes or puts this out", followed by "why do you say that?"  Jerre B. Swan, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, 98 TMR 739 (2008), at Part II(A).  With the Squirtco format, the respondents are shown both allegedly conflicting marks and asked whether goods bearing the two conflicting marks came from the same or different sources.  McCarthy § 32.173.50.

Here, Kaplan selected the Squirtco methodology because in Kaplan's opinion it mirrored the online marketplace and because the Eveready design was not appropriate for a brand that was not top of mind. (Bringuel Decl. Ex. D at 6; Kliebenstein Decl. Ex. 13 at 61:6-24.)

The Eveready method is often recommended for use with strong, top of mind trademarks (i.e., trademarks with high unaided awareness). Swan, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, at Part I. This is because the Eveready survey does not show respondents the senior mark—the respondent must be able to recall it internally within their memory. Pinkette's rebuttal expert, Dr. Bruce Isaacson ("Dr. Isaacson"), agreed. (Bringuel Decl. Ex. F at ¶ 36 ("Eveready format is typically used on strong brands, meaning brands that have top-of-mind awareness.").)

The danger in using the Eveready design with marks that are not top of mind among all consumers is that such a study would underestimate the likelihood of confusion. Confusion is underreported because respondents may not have the senior user's mark top of mind, like Revlon or Cover Girl, but may well become confused when reminded of the brand or when seeing the parties' marks in real life. *See* Swan, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, at Part III ("The internal search of memory for a strong brand's schema that exists at the core of an Eveready study is thus hostile to the general run of marks.").

Pinkette argues that because CWL contends its LUSH mark is strong, the Kaplan Study should be an Eveready design. However, just because LUSH is strong does not mean it is yet top of mind (although that is what CWL aspires for LUSH to be). Very, very few brands are "top of mind" brands, with high unaided awareness. Examples of such top of mind marks are Apple, Coke, and Nike. As CWL's marketing expert, Dr. Joachimsthaler testified, "[V]ery few brands obtain top of mind" and although "many brands don't obtain top-of-mind awareness, they're still strong brands." (Kliebenstein Decl. Ex. 12 at 117:19-118:10.) Contrary to Pinkette's position, a mark like LUSH can be strong yet not an appropriate candidate for an Eveready study. *See, e.g., Roederer v. J. Garcia Carrion, S.A.*, 732 F. Supp. 2d 836, 868, 876 (D. Minn. 2010) (finding Dr.

Kaplan's use of Squirtco style survey appropriate despite finding the senior mark CRISTAL for champagne to be strong); *see also* Swan, *Likelihood of Confusion Studies and the Straitened Scope of Squirt*, at Part III ("Comparatively few have (or can hope to develop) sufficiently strong memory traces so as to be cued by pattern matching engendered by a monadic exposure to a similar junior use."). In this case, use of the Squirtco method is proper, and Dr. Kaplan's testimony should be allowed.

### C. The Parties' Products Are Proximate.

Pinkette argues that Dr. Kaplan's survey is improper because the parties' LUSH products are not proximate in the brick and mortar marketplace and that Dr. Kaplan offered no evidence that the parties' goods were "proximate in the real world," presumably limited to brick and mortar shops. (Pinkette Br. (filed under seal) at 4.) Pinkette ignores the design of the Kaplan Study and evidence showing the requisite online proximity. As stated in the Kaplan Study, "the *Squirt* design requires that the plaintiff's and the defendant's products be proximate to each other, either spatially or temporally." (Bringuel Decl. Ex. D at 7.) Here, the evidence shows the parties' marks are proximate to each other, spatially and temporally, both in the online world and in the brick and mortar world.

Both parties operate websites and sell products online. Pinkette's contention that Pinkette does not sell clothes on the internet is not true. (Pinkette Br. at 4.) The attached internet printouts show LUSH clothing for sale on franchescas.com and Nordstrom.com. (Kliebenstein Decl. Exs. 20-21.) Pinkette's Lush Clothing Facebook page advertises its clothing for sale and provides links. Its November 28 and December 13 posts display a "cyber week" sale and clothing for sale on lulu.com:





The parties' products and marks coexist on the same Google and Amazon.com search pages, showing they are a mere click away from one another. (*Id.* at Exs. 22-24; *see also id.* at Ex. 13 at 71:18-72:17; Bringuel Decl. Ex. D at 7 ("Search engines, like Google, allow marks that are not found on the same website to appear together on the same page as the result of a search").)

The Kaplan Study mirrors this marketplace by evaluating confusion between the Lush Clothing website and the Lush Cosmetics website for trademark reasons. (Bringuel Decl. Ex. D at 3-4; Kliebenstein Decl. Ex. 13 at 68:21-69:18.) The Kaplan Study replicated the online marketplace and showed respondents links to, among others, CWL's LUSH website and LUSH Clothing's website and allowed the respondents to click those links and view static screen captures of the relevant website. This design mimicked the real world online shopping experience in which buyers can choose to click (or not click) any number of links and can choose to spend as much (or as little time) assessing a website as they want.

Although the Kaplan Study focused on the online world, the evidence also shows the parties' marks are proximate in the brick and mortar world. Pinkette admits CWL's and Pinkette's products are sold within the same shopping malls and/or shopping districts. (Pinkette Br. at 4.) This coexistence establishes proximity. *See Fortune Dynamic, Inc.* 618 F.3d at 1036-38 (proximity found in online survey even where "Delicious" tank tops were not sold side-by-side or presumably in the same store as DELICIOUS shoes); *Active Sports Lifestyle USA LLC*, 2013 U.S. Dist. LEXIS 190005, at *40-44 (where products were not sold side-by-side in marketplace, court found Squirt method admissible because criticism went to weight and noting "consumers are free to roam the on-line and brick-and-mortar marketplace"); *On Site Energy Co. v. MTU Onsite Energy Corp.*, No. 10-CV-1671, 2012 U.S. Dist. LEXIS 100690, at *8 (E.D.N.Y. July 19, 2012) (finding Squirtco survey admissible despite objection to proximity because there was evidence that allegedly infringing marks were in close proximity on a Google search results page and noting the

proximity criticism can be raised on cross examination).[2]  Pinkette has no legal authority to the contrary, and its motion should be denied.

### V. Dr. Kaplan's Testimony Will Assist The Fact Finder Without Prejudice To Pinkette.

Pinkette chose not to conduct its own consumer survey.  Arguing prejudice because CWL did conduct a consumer survey is improper.  The jury can decide for itself whether Pinkette's weak criticisms carry any weight, and Pinkette has its own rebuttal expert, Dr. Bruce Isaacson, to respond to the study, albeit with no study of his own.  Pinkette has not pointed to—and cannot point to—*any specific prejudice* that will result from the admission of the Kaplan Study. There is no risk of jury confusion or prejudice to Pinkette.  CWL, on the other hand, would be significantly prejudiced should the Kaplan Study be withheld from the jury.  It was conducted pursuant to the proper principles and methodology by a well known, experienced survey expert.  CWL has the burden of proof to demonstrate a likelihood of confusion in this case, and the Kaplan Study is an important piece of evidence.

///
///
///
///
///
///
///
///



---

[2] The fifteen year old *Simon Property Group L.P.* case, cited by Pinkette, does not support a different conclusion. (Pinkette Br. at 9.)  In *Simon*, the Court found that presenting a card depicting images of two website home pages to shoppers in a mall distorted the marketplace experience because it removed other links encountered when searching on the internet and removed additional descriptive information shown alongside the links. *Simon Prop. Group L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033, 1041, 1044 (S.D. Ind. 2000). The Kaplan Study, on the other hand, was an online survey that included three other clothing related links aimed at mimicking an online shopping experience and included the real-world descriptions associated with each link. (Bringuel Decl. Ex. D at 12-13.)

## VI. Conclusion.

For the foregoing reasons, CWL has met its burden to establish the admissibility of Dr. Kaplan's testimony and Pinkette's motion should be denied.

DATED: December 23, 2016                    Respectfully submitted,

*/s/Deborah A. Gubernick*
Wayne W. Call
Scott P. Shaw
Deborah A. Gubernick
Samuel G. Brooks
CALL & JENSEN, APC
610 Newport Center Drive
Suite 700
Newport Beach, California 92660
Telephone: (949) 717-3000
Facsimile: (949) 717-3100

John A. Clifford, *pro hac vice*
Heather J. Kliebenstein, *pro hac vice*
Ian G. McFarland, *pro hac vice*
Rachel Z. Scobie, *pro hac vice*
Linhda Nguyen
MERCHANT & GOULD P.C.
3200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-2215
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Counsel for Defendant Cosmetic Warriors Ltd.